The first case on the call of the dock this afternoon is agenda number four, number 127683, People of the State of Illinois v. John T. McKown and Mr. Ryan James Wayne McIntyre. Please proceed. Thank you, Your Honor. May it please the Court, Counsel, my name is Brian McIntyre. I am with the Office of the State Appellate Defender and I represent the appellant John McKown. Now, this is a rare case in which I will be asking the Court to rely on the trial court's findings of fact but to second-guess its conclusions of law. I'd like to begin with the second argument regarding corpus electi. In this case, the trial court was unable to determine what happened, where it happened, when it happened, how many times it happened, who was present in the home when it happened, who participated, that is, whether Grandma was involved in the process, whether threats were made, and so on and so forth. This shows that at the end of the case, the trial court had substantial reasonable doubt that should have been enough to preclude a conviction. But the trial court, though it found that the testimony of young J.M. was insufficient to support a conviction on its own, it relied on John's confession. And when it did, it failed to apply the corpus electi rule. The trial court found that John's confession was not obviously coerced and therefore must be admissible. But that's not the corpus electi rule. In this case, we have a unique situation where the child's testimony, though he is 12 years old at the time of trial, is explicitly not enough for a conviction. He contradicts himself with every retelling of his story. And the background of his story is troubling as well. As the trial court says, we have a unique, bizarre, if not very bizarre case in the facts. J.M. could not say that the only place he was exposed to these sorts of acts was through what he alleges happened with John. Brian McCown, J.M.'s father, had been in detail describing to J.M. this abduction by this third party named Scott Nahana where he was taken to Disneyland and he was held there for a month and anally raped. And he describes this to a six-year-old every single day. And, in fact, when J.M. eventually describes what he says John did to him, the terms he uses are very much like what a father might have used to describe to a six-year-old these horrible acts, to put it in simple terms. But when J.M. is asked follow-up questions, he has difficulty answering them. He can answer questions about the abuse that his sister Kayann, who's autistic, has suffered at the hands of their mother's boyfriend, Benny. He even apparently was privy to his mother's conversations about how Benny was no longer sleeping with her and that's why she suspected that he was abusing Kayann. He has all of this information about what happened to Kayann, about the ligature marks, about the restraints that were used. And even when he discloses they're at the hospital for Kayann to be evaluated, he goes to his uncle and he says, oh, the same thing with me, the same thing that happened to Kayann. When he goes for his recorded interview, same thing that happened with Kayann. And so here, where the trial court found the child's testimony was explicitly not enough for a conviction, it found that John's statements were very important, if not critical, to the state's case. I would note the court ended up convicting John of account that J.M. explicitly said that even the type of contact never happened. But ultimately the court said that John confessed to a type of contact that was sort of similar to what J.M. alleged. And it failed to conduct the corpus delecti analysis. Now, the corpus delecti analysis in Illinois is in two parts. Unlike the federal system, we don't comb through the entire interrogation process to determine whether a piece of information came from detectives or from the defendant. By the way, if we did, I would clearly win. Every piece of information the state attempts to rely upon was provided by the detectives. Tell us about some sort of anal sex act. Tell us a story in which your seaman makes contact with J.M.'s buttocks. And only after several hours of that does John craft such a story. But under the corpus delecti rule, the state is required to corroborate the specifics of the confession. And in this case, J.M. refuted every specific detail of John's confession. J.M. did not ask John any questions about sex or masturbation. J.M. did not pull down his pants and bend over in front of John. J.M. was never in the basement at the same time John was. He was only in the basement that John used once, and John wasn't home. In the same way, John repeatedly refuted each of the specific details of J.M.'s story. There's no penis extender, as J.M. alleges. There's never one found. John denies owning one. There's no tablet that J.M. describes, no movies of child pornography. J.M. says that maybe people were always home or maybe people were never home. And so his own allegations are so inconsistent, it's hard to say what he alleges. But at the very base, what J.M. alleges is distinct from what John crafted into his statement. And if the court were to find that John's statement were corroborated, I would have to ask, and I would actually pose this question to the state for their argument, what was he convicted of? Was he convicted of what he described in the basement, or was he convicted of what J.M. described? Because they are two completely separate incidents. And in this case, what we have is a confession that cannot be corroborated and evidence of other similar alleged behavior that can't support a conviction. And so from these two separate cases, we have insufficient evidence that the state has managed to put together and get a conviction in one case. But the trial court couldn't say what it was convicting John of. I would agree with the court that something bad happened to J.M., but we have no idea what it was. Many times, a defendant's confession may minimize what actually happened. But what you're saying is that if a defendant minimizes and it doesn't match exactly what the victim said happened, then we don't even look at the confession. It doesn't come in. Your Honor, I would push back only on the assertion that it has to match exactly. It doesn't. And as this Court addressed in P.V. Lara and in P.V. Sargent, it's not so much about the elements. You know, in Sargent, there were several instances with exactly the same elements alleged, but there was only corroboration of one incident, and therefore, only that incident could result in a conviction. In Lara, they said that the two incidents that were described were virtually identical in every detail between the defendant's confession and the child's statement. Here, however, in order to find that the state established corpus delecti, the court would have to hold that the defendant, who's interrogated by police and told to confess to a specific crime and does so, but gets every single detail wrong, has given a corroborated confession. And it sort of puts the cart before the horse. Here, this all originates with J.M.'s allegations relayed to John through the detectives, but the minimal information they give him is the only thing in his story that has anything to do with what J.M. describes. John repeatedly says he's not quite sure what he's being accused of, and that's fairly clear in his statement when what he describes at the detective's insistence is this child asking questions about masturbation and sex. The detective tells him to say that is some sort of an anal sex act, not at all like what J.M. describes because the detective told him to describe an anal sex act. So I would push back largely because in Illinois, an extrajudicial confession is presumed unreliable, and only if the state can present evidence showing that the events described in the confession actually took place may that presumption be overcome. And then the case would advance to the second stage where the court would analyze both the allegedly corroborating evidence and the confession itself and determine whether everything together proved guilt beyond a reasonable doubt. So the acts don't have to just match up. The acts alleged by the victim and the acts he confessed to don't have to match up those specific acts, but all the details surrounding those acts also have to match up. No, Your Honor. I believe that at least some of the details must match, and we have a unique case here where none of the details match. The only thing that matches is what detectives told him to add to his story. What kind of rule comes out of this case, then, if some of the details – well, you're saying none of the details match. Correct, Your Honor. It would be – But some of the details do, in fact, match. I mean, the victim alleges anal penetration. The defendant confesses to anal penetration. Your Honor, I would push back and say that's not a detail in the way that we're discussing it. The question, really, is whether we're talking about the same act. As we saw in, I believe, People v. Perfecto, the true rule is whether – is that the State must present some evidence independent of the confession and consistent therewith, tending to confirm and strengthen confidence in the confession. As this Court said in Lara, the corroborating evidence must be sufficient to assure the Court that the confession was not fabricated out of whole cloth. But we've never held that the corroborating evidence has to be a mirrored image of the confession. No, Your Honor. However, there must be at least some correspondence in the details, in the specifics. As we saw in People v. Luder, there was a building that burned down and someone who confessed to arson, but there was no evidence that there was a criminal burning of the building. The specifics of the defendant's confession did not bear out. And though a building had burned, that defendant could not be found guilty, where there was no reason to believe the confession. And the same is true here, because there's no reason to believe John's. What anal penetration is is a fact-specific statement. Your Honor, no. I would argue that it is not. For example, John was charged with at least one act of anal penetration in a five- or six-year period. Right? Now, this is the only instance where something could be charged that broadly and that vaguely. And that's why we keep seeing these cases come up in Corpus Electi, I believe. But — Mr. McIntyre, was the child interviewed more than once at the Child Advocacy Center? Yes, Your Honor. The second interview was, I would say, more fantastical and absurd than the first. And the child later denied making most of the statements that he made in the second recorded interview. At trial, he refuted almost every statement he had made in one of those two interviews. And what was the age of the child at the time of the interviews? At the time of the interview, he was 11. At the time of trial, he was 12. Yeah. What's the medical IQ of the child? And was he in school ever? Your Honor, it is unclear what his IQ was or his education status. I believe he was homeschooled at one point, but I don't know if he later went to school. But what is clear is that the trial court could not find his testimony credible and could not determine what exactly he was alleging or when or how. And I think that's very important here. At the end of the case— Did the trial court take in the influence of other people that lived with the child? Your Honor, I believe that the court did, although it didn't specifically reference them. It said this is a unique, bizarre case, and I think something happened to JM. But that was really the most definite statement it could make, and I would agree with that. Something happened to JM, but whether it was his mother or his father or his mother's boyfriend or someone else, this record is insufficient for the court to have found beyond a reasonable doubt that John did what was charged. And again, even if it did try to find that, it would have to figure out whether the confession or the allegations or what he's being convicted of, because they are entirely separate incidents if they were both true. If they were both true, they'd be separate counts. So the Corpus Delecta Act can't be other criminal acts. It can't be other crimes. Correct, Your Honor. It can't be this exact crime. Yes, Your Honor. And I know Sergeant basically says that, but doesn't Lara come off that a little bit? And certainly Justice Thomas' special concurrence in Lara comes way off that. Perhaps a special concurrence, but Lara actually picked up on a theme from Sergeant and said that in some cases, two separate acts can be corroborated by the same information. In Lara, they said the reason the two separate acts were corroborated was because both the child and the defendant described the two specific acts almost to a tee, the same room, the same night, the same position. They were clearly describing the same events. And they said that Lara was that special case where the court could be assured that the confession was not fabricated from whole cloth. If someone were to admit to have committed the same sort of offense, be it battery or retail theft or whatever it is, on a different date in a different way, that would not be a confession to an allegation that you committed the same offense again today. That would be strictly other crimes evidence and certainly wouldn't come in as a confession to the same act. Of course, sex crimes are much different when we're talking about child victims. They are, Your Honor. And again, the reason is, I think, in the charging, and that requires this sort of case-by-case analysis unfortunately more often in these sorts of cases. With that, I would move on to the First Amendment issue. The trial court, again, I would ask you to adopt its factual finding. It said that, obviously, in this case, there were no children engaged in acts of child pornography. That's true. Even the 12-year-old J.M., who could not be consistent about anything else, knew that these were cut-out pictures of children's faces and cut-out pictures of penises taped together. Now, I want to back up for a second and address what is. These are taped together in the form of pornography, correct? Your Honor, yes and no. I would actually like to address that distinction next. This is not about prurient interest. It is not about lack of redeeming social, scientific, or artistic value. It's not about, I know it when I see it. So it's not the traditional type of pornography. Child pornography is a legal term of art, and it's distinct from obscenity, which is what would often be criminalized under a pornography sort of idea, in that sharing certain images is objectionable. And we have this detailed standard for whether there's redeeming value in the context under which it was shared, et cetera. But the statute says an individual commits possession of child pornography when, with, quote, with knowledge of the nature or content thereof, possesses any film, videotape, photograph, or other similar visual reproduction of any child engaged in any act described in the provisions. And the other statute says child pornography includes film, videotapes, photographs, visual medium or reproduction that appears to be that of a person either in part or in total under the age of 18, regardless of the method of which the film, videotape, photograph, or other similar visual mediums or reproductions were created or adopted. Your Honor, so these things were created, correct? Yes. The collage was created. Yes, Your Honor. And so you've got this creation there in a format that represents child pornography. Your Honor, I would point to a few decisions. First, this Court's decision in Alexander. In Alexander, this Court determined that the Illinois statute does not refer to morphed images, that the use of the word child, as it was originally written, was unconstitutionally overbroad, that in order for the Illinois statute to be constitutionally applied, the word child must refer only to live human models or actors, actual people, not objects or things. And so the question is whether these images would lead a reasonable viewer to believe that the actors actually engaged in that conduct on camera. That fits with this Court's examination of the statute in Alexander. I would note that in Alexander they said we don't need to get into this Ashcroft era. We're back in Ferber. We are only talking about those materials which memorialize an act of child abuse. But see, that's my point. If you cut up various photographs that in and of themselves were not pornographic, but you create an image in a format that becomes pornographic, doesn't that fit these two statutes? No, Your Honor. It cannot constitutionally fit these two statutes. And under this Court's ruling in Alexander, it does not fit the plain meaning of child. Because the issue, as I said, is not about whether we have material, including children, which appeals to the prurient interest. That might seem facially like what we'd be looking at because the words child and pornography. But instead we have a term of art. And Ferber says that after Ferber, those materials which do not depict a live performance will retain First Amendment protection. Later in Williams, sorry, in Ashcroft, the United States Supreme Court overturned the Child Pornography Prevention Act because it reached well beyond the state's interest in protecting real children from child abuse. They said that the state's argument in that case would remove the distinction between those materials which were themselves the product of child abuse and those which merely communicated the idea of sexual conduct involving children. And the idea of sexual conduct involving children while disturbing, while it is not pleasant to look at these images, remains constitutionally protected. And in Ashcroft, they actually say we want people, if they have these urges, we want them to fulfill these urges to get them out of their system without harming real children. But they left the door open for morphing. That would still be a violation. Your Honor, the Ashcroft court referred to computer morphing as a lower tech means than virtual pornography. No, Your Honor, they did not reach that question. They said that it presented in some ways a closer question because the interests of real children might be implicated. No, Your Honor. Those cases dealt with a federal statute that was amended. The Protect Act was amended after Ashcroft to allow for those images that appear to represent a child engaged in sexual conduct. As the court said in Williams, the distinction is that the reasonable viewer must believe the actor is engaged in that conduct on camera or the image would cause no reasonable viewer to believe that these events actually happened. It cannot be child pornography if shared. It could be obscenity. But the acts of other actors unlawful in their own respect cannot be used to make John's actions unlawful. Speech within the rights of adults to hear cannot be silenced entirely because children might be exposed to it. For the same reason that parents are not prohibited from possessing any and all pornography in their home because the child might be exposed to it. The child might go snooping. In this case, it's like a puzzle. So you cut out pieces for the puzzle and then you place the puzzle together so it results in that kind of image, correct? In a way, Your Honor. Again, the key here is that everyone, all the way up the line, I believe the State even concedes that this is not a record of the real thing. It's not a film, photograph, videotape, or other reproduction of a live act. And that, both under Alexander and under Ferber and Ashcroft and then later under Williams, that's what's needed. It would not be a defense for the defendant to come in and say, no, I just made a really convincing, bless you, fake. Instead, where no reasonable person could believe it's the real thing, Ashcroft says, if that statute still criminalizes the conduct, the statute is unconstitutionally overbroad. Well, the sentence is regardless of method, correct? Your Honor, in Alexander, the Court responded to that and it said, that's referring to the way that the image is stored. And that actually fits with Ashcroft and Ferber, that it's not about what the image communicates. It's about how the image is created. So storing an image electronically that was originally, I see that I'm out of time. May I finish my answer? Storing an image electronically that was originally, sorry. Well, it appears to say regardless of the method, blah, blah, blah, it's created. Your Honor, I don't believe that's accurate, especially in light of Alexander and Ashcroft. If it were regardless of the method it was created, it would run afoul of Ashcroft, where it says that it can't be, it has to be based on the way it was created. It can't be based on what it communicates. Thank you. Thank you. Child pornography includes a film, videotape, photograph or other similar visual medium or reproduction that is or appears to be that of a person either in part or in total under the age of 18, dot, dot, dot, regardless of the method by which the film, videotape, photograph or other similar visual medium or reproduction is created, adopted or modified to appear as such. May I? So that's created, adopted or modified. Of course, this was modified. No, Your Honor. It was not modified to appear that an actual child was engaged in sexually explicit conduct or sexual conduct, and that's really the problem is that this does not appear to be a real child engaged in sexual conduct, and we have to be talking about a real, live human actor. You can finish up now. I apologize. Thank you. Thank you. Thank you. Mr. Fisher?  Good afternoon, counsel. May it please the Court. Assistant Attorney General Garson Fisher for the people. Your Honors, I'd like to start where defendants' conversation with this Court left off by clarifying what it is that the Supreme Court did and did not hold in Ferber and then in Free Speech Coalition v. Ashcroft. There's no question that the Court held in Ferber that so-called real child pornography, images of real children actually engaged in sexual activity, is unprotected under the First Amendment. To be sure, the Court also clearly held in Ashcroft that so-called virtual child pornography, images that do not, excuse me, portray a real child, are protected speech. The question before this Court really is what to do with so-called morphed child pornography, images that depict real children who appear to be but did not actually engage in sexual conduct. And because many of the psychological and reputational harms that the Court considered in Ferber are present in morphed child pornography, this Court should hold that morphed child pornography, like all pornographic images portraying real children, are not protected by the First Amendment. Does that mean that if the defendant had taken the magazines with the pictures of the children and drawn penises using a black marker, would Section 11-20 still apply? I think probably not, Your Honor. It's certainly a much closer case. There is the element that has to be proven that it portrays simulated sexual contact. I don't, I think if you look at the plain language of the statute, which is going, what's going to guide the Court's inquiry into whether morphed child pornography is covered by the statute, which is a question that, of course, the Court should answer before concluding that covering such pornography does not violate the First Amendment, the plain language of the statute defines the kind of contact that has to be portrayed and includes contact between a child's mouth and a sex organ. I think if it was just a drawing of a sex organ, then under the plain language of the statute, it would fall outside the scope of the statute. But what we have here is an image that appears to be a child's mouth in contact with a sex organ. There is nothing in the statute that says that the simulation of that act or the appearance of that act has to cross a certain threshold of realism to fall under the plain language of the statute. So I think that simply looking to the plain language of the statute and both the elements of the offense and the definition of child pornography, because it is a term of art, as the defendant notes, but it's a term that's defined by statute, that these images, any image that appears to portray a real child whose mouth is in contact with a sex organ is covered by the statute. And I think that the Court's discussion of the statute in Alexander actually helps demonstrate the point, because what the Court actually held in Alexander was not that the Illinois statute wouldn't cover images such as these. What it held is that the statute went far beyond it to cover the kind of virtual images that are protected by the First Amendment under Ashcroft. And if you think about the mens rea or scienter element of the offense, it becomes evident the difference. The offense requires that the defendant knew or should have known that the child portrayed is under the age of 18. Well, of course, if there's not a real child that's a purely computer-generated image, then it's impossible to satisfy that element. These artificial children are, as the U.S. Supreme Court put it, forever underage. There's simply no way to assess the mens rea element of knowing or should have known that the person portrayed was under 18. Not so here, because we do have real children portrayed in these images. Is the issue here whether or not the pictures show that the children seemingly engaged in sexually explicit activity? The question in Bach or the statement was an identifiable minor child, which is what you're talking about, seemingly engaged in sexually explicit activity. Now, the drawing, maybe not so much. Computer morphing, where you put the head of a child on the body of maybe an adult, whatever, clearly more toward seemingly engaged in sexually explicit activity. This seems to fall somewhere in the middle. So is that the question now? Well, I don't think it ultimately is the question, because I think that the plain language of the statute simply says that it shows a simulated sex act or appears to show this sex act. And these images, leaving the realism or the likelihood that a viewer would believe that they really occurred aside, these images do appear to show the real children's mouths in contact with real penises. Now, are you referring to both sections, subsection 6 and subsection 7, or just one of those? I am referring to, well, so I think both based on the simulated language in the act and the appears to language in the statute. They use different languages. The offense is defined as showing these acts real or simulated. The definition subsection refers to appears to show. But I think either of those are satisfied by the images here. Your earlier statement, is that in line with the statute that says that medium of reproduction that is or appears to be that of a person either in part or in total under the age of 18? I think it is consistent with that plain language. And, you know, to be clear, to take sort of the quintessential computer morphing example that your colleague referred to of a child's head on an adult body engaged in sexual acts, that is on some level also inherently not realistic looking. A viewer is going to recognize in many of the cases that are discussed that the computer generated image is also the face of a child that is too young to have the body or be engaged in the acts portrayed. So it's untenable, I think, to write a realism requirement into the plain language of the statute, especially where I don't think that the statute includes such a realism requirement. But I also think that to the extent that the question is, does the image as a factual matter, does this particular image as a factual matter portray a simulated sexual act? That's the kind of thing that a trier of fact resolves. The question of statutory interpretation, does this statute cover morphed child pornographic images? I think the plain language of the statute is entirely unambiguous that it does. That is or appears to be that as a person either in part or in total. As well as the word simulated in the portion of the statute that defines the elements of the offense. If you look at the possession, the possession subsection refers back to the sort of creation subsection. The creation subsection defines the images that are covered and one of the images is simulated. Or one of the words that appears there is simulated contact. What's your response to the inconsistency of the statements between the defendant and the victim? So turning to the corpus delicti question, the court has been consistent that the standard for satisfying the corpus delicti rule is lower than the standard for a sufficiency of the evidence analysis. The question for corpus delicti is, of course, whether there is some evidence that corroborates that the offense that is confessed to occurred. And it's important to note here that we have sort of three categories of offenses. We have offenses to which the victim testified that defendant did not confess to. And the court found defendant not guilty of those offenses. We have offenses that the victim testified to, albeit inconsistently, that, excuse me, that the defendant confessed to that the victim did not testify regarding. And while the trial court found defendant guilty of that offense, the appellate court found that in that case the corpus delicti was not satisfied. I think there is a colorable argument that the corpus delicti was satisfied in that case, but the people aren't challenging that determination. So what we're talking about here is the remaining two offenses that the defendant confessed to and about which the victim testified. Yes, there are inconsistencies in some of the factual allegations, such as where the offenses occurred. Yes, there were some inconsistencies in the victim's testimony from pretrial statements. But the victim did testify that there was contact between the defendant's penis and the victim's anus, which defendant confessed to, and that there was contact between the defendant's semen and the victim's buttocks, which defendant confessed to. And since we do have some evidence in the form of the victim's testimony corroborating that those offenses occurred, corpus delicti is satisfied for the defendant's confession as to those offenses. And I think Sargent actually helps prove the State's point here, because while certainly, and that's a case where you have the defendant confessing to many more offenses than the victim testified about, but for the one offense that the victim did provide some statement to corroborate, and the defendant, excuse me, the victim's testimony in that case is far more inconsistent, both internally and with the defendant's confession than we have in this case. To that one offense, the Court found that the corpus delicti rule was satisfied. So having satisfied corpus delicti for the confession for those two offenses, the combination of the victim's testimony and the defendant's confession, when viewed in the light most favorable to the State, is plainly sufficient to satisfy a challenge to the convictions on those two offenses. Well, if Your Honors don't have additional, I think that looking at this Court's jurisprudence on the corpus delicti rule, and also the standards for sufficiency, I mean, the Court was certainly aware of the inconsistencies in the victim's statements when it made its determination of guilt. That's why it did not find the defendant guilty of the offenses to which he did not also confess. So because the sufficiency standard is going to apply to the ultimate question of whether these two offenses convictions should be affirmed, looking at the Court's jurisprudence on the corpus delicti rule and on the sufficiency standard, I think it is plain that both the corpus delicti rule is satisfied here and that the evidence was sufficient for the two offenses that remain, the two contact offenses that remain. So if the Court doesn't have further questions on that issue, I would turn back to — What is the vagueness in the corpus delicti jurisprudence of this Court? What is the vagueness? What is the dilemma of the corpus delicti jurisprudence of this Court? I think that the jurisprudence in this Court is clear that what is required here is some evidence that corroborates the specific offense to which defendant confessed. Or, I mean, yes, there might be circumstances, as the Court has recognized, where the conduct described is so similar as to corroborate a different offense. But at the very least, where the corroboration is to the same offense to which the defendant confessed, that that evidence is sufficient to satisfy corpus delicti. And allegedly the two statements are very different. Well, there are certainly differences. There are certainly some inconsistencies. Again, the Court resolves the corpus delicti question, viewing the evidence in the light most favorable to the State, just like it does the ultimate sufficiency question. But the one — the two things that are absolutely consistent, and there are the two things that matter here, are that both defendant confessed to and victim testified and made statements that the defendant's penis came in contact with the victim's genitals. And those are the offenses. Those are the offenses to which defendant confessed, and they are corroborated by the victim's statements and testimony to some extent. And that is sufficient for — plainly sufficient under this Court's jurisprudence for the corpus delicti ruling. Turning briefly back to the child pornography conviction, for the reasons that we discussed, I think the plain language of the statute clearly covers so-called morphed child pornographic images. And as Your Honors noted earlier, the vast majority of courts that have considered the question have concluded that such images are not protected by the First Amendment because almost all of the psychological and reputational harms that are present any time a pornographic image portrays a real child are present with these images. As this — to paraphrase this Court, it noted once that where a pornographer uses an image of a real child, it offends the human spirit to see a child used as an object for sexual gratification and that the law will not tolerate that. This Court and the Supreme Court have repeatedly recognized that there are psychological harms that are independent from the harm that comes from having participated in the sexual act that affect real children when they are portrayed in pornographic images. And there were unquestionably real children in these images. So for those reasons, unless the Court has any further questions, the people would ask that this Court affirm the judgment of the appellate court affirming both defendants' contact sex offenses and child pornography conviction. Thank you, Your Honors. Thank you, Mr. Fischer. Mr. McIntyre, you can proceed. Thank you, Your Honor. I would like to begin with the State's argument about simulated sex acts. This goes directly back to Williams. Williams says the term simulated sex acts makes it clear that while through camera tricks or otherwise the conduct might not have actually happened, a reasonable viewer must believe the image is genuine, that the actor is actually engaged in that conduct on camera. This Court found that the child pornography statute refers to live human actors engaging in sexual acts. It does not refer to the idea of children. And in fact, while the State argues that each of its arguments was upheld by the United States Supreme Court, Ashcroft refutes almost every one of the State's arguments. The State argues that the use of real children's images will harm those children that are never exposed to those images. And the Ashcroft Court didn't take that argument up. But it did say that these fake images, these obviously fake images cannot be used to seduce real children, that they cannot be prohibited merely because they are disturbing. It's not about what they communicate. It's about how they're made. And these were made with one man alone in his basement with magazine clippings. There were no children, no live children being subjected to sexual themes in any way by his actions. The idea that something appears to be a photograph when it is clearly a collage is... Frankly, I don't know how to respond to that. If one were to attempt to submit a collage as real evidence at trial, it would be immediately apparent that a collage is not a photograph. It is not a record of a real act. This is not memorializing something that happened. And according to Ferber, that's what child pornography statutes can target, something that really happened. This court said this is a Ferber statute. It doesn't go to the PROTECT Act or to the post-Ashcroft. This idea that Ashcroft never addressed about whether computer-morphed images, which are, by the way, one insular image, it is one file that cannot be parsed out, as opposed to these, which are two images, clearly disparate images taped together. If someone were to tape a picture of a penis into their yearbook, a child doing something juvenile, even beyond drawing a picture of a penis, but to tape one into their yearbook would not be production of child pornography. It would not be possession of child pornography. And I think it's clearer there where it's someone acting in a juvenile way as opposed to this man who's working out what was done to him as a child. Regarding corpus delicti, the State argues that there were some inconsistencies. But it doesn't actually point out any consistencies. It says, well, he confessed to what detectives told him to confess to, and that must be good enough. But they can't point to a single thing in common between John's incriminating statement and the child's allegations, because there wasn't anything. And here, the Court does review the evidence in the light most favorable to the State, but it reviews de novo whether the confession was sufficiently corroborated to be considered as evidence of guilt, and it simply wasn't. There was absolutely no corroboration. There does need to be some evidence corroborating the confession. And again, I wasn't there, but I'll tell you for a fact that JM did not go into the basement, pull down his pants, and ask John to perform an anal sex act on him. He says it didn't happen, and it didn't happen. It is patently delusional. And the fact that John's confession was clearly fabricated from whole cloth is enough where the State provided nothing to corroborate his confession, nothing to say that that act actually took place. That's enough that it can't get past the first stage of corpus delicti review, that no court could find that what John describes and what JM describes are the same act. The State's only argument is that they generally allege the same elements. Well, this Court rejected an elements-based test in Lara. And the State says, well, we don't have to prove the elements, but if all we can prove are the elements, then we must win. But I would reference by analogy a murder case. Police find a body in the woods. It's been stabbed three times in the back with a wedge-shaped implement, like a letter opener. They don't know who did it. They release information into the press. And again, the corpus delicti rule is to ensure not only that an offense actually took place, but the defendant committed it. Police release some information about a stabbing victim, and someone comes forward and says, I did it. They have a female victim. The person says, I stabbed him 27 times in the chest with a knife from my kitchen. Police will investigate that confession, but they can't tie it to the completely different murder, even though it has the same elements. It's a stabbing death. But it's not the same offense. So the State argues that any similar offense, any confession to a similar offense is good enough. But the corpus delicti rule requires more. It requires specific corroboration in the details, not the elements, but the details. And again, if this Court were to abandon the corpus delicti rule, there would need to be some other safeguard. The Court has said that the Reed technique may reliably produce confessions, but it does not produce reliable confessions. And that's a problem. And in order to ensure that someone's not convicted based on a confession to an event that never happened, the Court requires the State to present evidence that the events described in the confession took place. And it's not even arguable that the events described in John's confession were genuine, especially where J.M. refuted ever even being in the basement with John, ever asking those questions. He refuted every single detail of John's confession. The only thing in common is police say describe an anal sex act, and after several hours after this, what I believe was a specious voice stress test, he eventually does. But that's exactly why we have the corpus delicti rule, to ensure that not only physically coerced confessions, but those confessions that are born out from a mentally compromised defendant, someone like John, who spends his entire life trying to deal with these collages, trying to deal with the abuse he suffered as a child, who's so overwrought with that, that police are able to convince him that his memory is not genuine, that what he believes, what he remembers is not real, and to tell them something like what they're suggesting to him. But that cannot be the resolution of the corpus delicti rule. If it were, then the mere fact of a confession, as the appellate court found, would be enough to corroborate otherwise unbelievable testimony. And I'd like to talk about that for a second. The appellate court, like the trial court, never analyzed whether John's confession was corroborated. It said the fact that he confessed corroborates the child's allegations. But that's diametrically opposed to the rule. If police have this information, they say, we believe the child, we know the child's telling the truth over and over and over to make the defendant question his own memory of reality, and eventually he tells the police what they've been telling him for three or four hours. How can anyone reasonably say that information came from the defendant? It did not lead to information that detectives otherwise would not have discovered. This is another part of the corpus delicti rule. It is entirely separate, entirely fabricated, and cannot be relied upon to support a conviction. The trial court here found that it couldn't be sure what happened, where it happened, when it happened, how many times it happened, whether grandma was involved, whether threats were made, and more. What happened and who did it are the two things that the corpus delicti rule is there to ensure that the state actually has to prove. And here they didn't. They were simply allowed to use the fact of a confession and completely disparate, allegedly corroborating evidence to convict a man. You're implying that the confession was from abusive behavior by the police? No, Your Honor. As this Court has recognized, even apart from abusive behavior by the police, standard police interrogation methods are problematic in that they suggest to a defendant things that he should confess to. And then relying on the things that is fundamentally wrong to say, well, the defendant provided us information that detectives gave to him. That doesn't show the defendant's knowledge of anything. It doesn't show the truth of what he's saying. And so it's a slightly different analysis there. Your Honors, I would close by coming back to this child pornography issue. It's not about whether these are pornographic materials in appealing to the prurient interest. That is entirely aside from the point. It's not about whether the Court finds the materials objectionable. I find the materials objectionable. But the speech of the Klu Klux Klan is protected. This speech is protected, even though we find it objectionable. It may be objectionable, but it is protected by the First Amendment. As they say in Ashcroft, speech within the rights of adults to hear, or in this case to see, cannot be silenced entirely in an attempt to shield It cannot be called child pornography under that term of art. Thank you, Your Honors. I would ask that this Court reverse all of Mr. McAllen's convictions on those bases. Thank you, Mr. McAllen. Case number 127683, people of the State of Illinois v. John T. McAllen, will be taken under advisement as agenda number four. Thank you, Mr. McAllen, and thank you, Mr. Fisher, for your arguments this afternoon.